J-S47008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BONITA YATES | : | |
| | : | |
| Appellant | : | No. 1625 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 7, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0006170-2019

BEFORE:  PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:                  **FILED FEBRUARY 6, 2026**

Bonita Yates appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following her bench conviction of simple assault and recklessly endangering another person ("REAP").[1] On appeal, Yates challenges the sufficiency of the evidence to sustain her convictions. After careful consideration, we affirm.

Yates and the complainant, Gloria McMillan, were involved in a physical altercation that occurred in Philadelphia on June 19, 2017. On September 6, 2019, Yates was charged by criminal information with simple assault, REAP, and aggravated assault[2] in relation to the incident. The court held a bifurcated

---

[1] 18 Pa.C.S.A. §§ 2701(a), 2705, respectively.

[2] 18 Pa.C.S.A. § 2702(a).

waiver trial beginning on February 26, 2024, and concluding on April 4, 2024. We glean the following from the evidence presented at trial.

Gloria McMillan testified that, at approximately midnight on June 19, 2017, she was waiting for a neighbor outside the Mary Deli, located at 5200 Lethesal Avenue in Philadelphia, when she encountered Yates, whom she "kn[e]w of" from the neighborhood. *See* N.T. Trial, 2/26/24, at 12-15. McMillan testified that Yates initiated verbal contact by telling McMillan to "go home" because McMillan was "going to eff up [her] hustle." *Id.* at 15. McMillan testified that, as she walked home, she stopped to speak with some acquaintances when she encountered Yates once again. *See id.* at 15-16, 22. When asked what happened next, McMillan testified to the following:

> [Yates] crossed Cedar Avenue, came towards us. She said, "didn't I tell you to take your 'A' home," [and] punched me in my left eye. I went to swing back. The next thing I know she [swung] me around, and I fell and broke my wrist.

*Id.* at 16. McMillan testified that Yates punched her with a closed fist and that McMillan proceeded to the emergency room to seek treatment for her fractured right wrist, which required surgery to repair and physical therapy to rehabilitate. *See id.* at 17-18. McMillan indicated that she no longer has full facility of her right wrist. *See id.* at 18. On cross-examination, McMillan confirmed that, upon her release from the hospital, she spoke with a detective at the police station. *See id.* at 28. McMillan maintained that she did not strike Yates at any point during the altercation, as she is "not that type of person." *Id.* at 28.

Detective Jarell Babb of the Philadelphia Police Department testified that he interviewed McMillan in the course of his investigation of the incident. **See id.** at 30. He further testified that based on McMillan's complaint, Yates was developed as a suspect and that he prepared a photo array from which Yates was positively identified as McMillan's assailant. **See id.** at 32.

Yates testified at trial and presented a vastly different version of events than those described by McMillan. **See id.** at 33-36. Notably, Yates testified that McMillan was the initial aggressor and hit Yates with a large bottle of vodka. **See id.** at 36. Yates testified that, in response, she punched McMillan in the face. **See id.** When asked why she hit McMillan, the following exchange ensued:

A. Because she hit me with the bottle in my back, and I got a back problem. Like I brought my MRI, back in the day my MRI in my neck, and I have carpal tunnel, so it's no way I can body slam her or turn her or twist her and body slam her. There's no way.

Q. Okay. Do you know what the bottle was made of?

A. All I know [is] it was a bottle and it hit me in the back. They [were] drinking.

Q. After she swung the bottle the first time, what did she do?

A. Can I say something, I don't know if it was like a hard plastic one or a bottle because I had stopped drinking and doing all that hanging in the street so I'm not sure. All I know is she hit me with an item and that was the bottle and it hit me in the back.

Q. And after she hit you in the back the one time, what did she do next?

A. I hit her in the face, and then she went over to where her friends [were] and got a guitar.

Q.    Why did you hit her in the face?

A.    Because she hit me with the bottle in my back.

Q.    Okay. Was she going to do anything else?

A.    When she ran in the crowd and got a guitar, she swung at me, and I moved. I stepped. I always had my cane for years. I moved back. She swung. She missed, fell, and I walked away.

*Id.* at 36-37. The parties stipulated to Yates having a good reputation in the community for being peaceful and law-abiding. *See* N.T. Trial, 5/7/24, at 7.

Romaine Cropper, who was a bystander during the altercation, testified on behalf of the defense and indicated that Yates was her neighbor whom she had known since 1987. *See id.* at 9. Cropper also testified that she had known "Diane" since the 1990s. *Id.* Cropper indicated that she did not know Diane's full name, and when asked whether Diane's full name is Gloria McMillan, Cropper responded "I don't know." *Id.* When defense counsel asked Cropper what she had witnessed during the altercation between Yates and Diane, the following exchange ensued:

A.    Only thing I can recall [] seeing is her swinging a guitar behind me. I heard a glass fall, but I don't know where the glass fell from and broke, but I know she swung from behind me at [Yates] and fell. I [saw] her fall, like, the grates that we have on the ground, like, tripped over and fell into this gate that's where this, like, little cubbyhole used to be at.

Q.    Okay. When you said, "she swung the guitar," who do you mean?

A.    Diane.

Q.    Have you seen Diane here today?

A.    Yeah, Diane [is] right there.[3]

* * *

Q.    And what did you see, if anything, after the guitar being swung?

A.    I walked off. The only thing I remember was seeing her fall.

*Id.* at 10-11.

On May 7, 2024, the court convicted Yates of simple assault and REAP, imposed a sentence of one year of reporting probation on the count of simple assault, and imposed no further penalty on the count of REAP. On June 6, 2024, Yates filed a notice of appeal from her judgment of sentence. Both Yates and the trial court have complied with Pa.R.A.P. 1925. **See** Pa.R.A.P. 1925(a), (b).

On appeal, Yates presents the following question for our review:

Was there insufficient evidence to support the verdict of guilt[y] on the charges of simple assault and [REAP] as the Commonwealth failed to disprove that [Yates] acted in self-defense?

Appellant's Brief, at 3.

Yates challenges the sufficiency of the evidence to sustain her convictions of simple assault and REAP. "Because a determination of the sufficiency of the evidence presents a question of law, our standard of review

_____

[3] At no point during Cropper's testimony was it noted for the record that she had identified McMillan as Diane. **See id.** at 8-18.

- 5 -

is *de novo* and our scope of review is plenary." ***Commonwealth v. Bettis***, 347 A.3d 779, 786-87 (Pa. Super. 2025) (internal quotation marks and citation omitted).

> When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented.

***Id.*** at 787 (citation omitted).

A person commits the offense of simple assault if she "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S.A. § 2701(a)(1); ***see*** 18 Pa.C.S.A. § 2301 (defining "bodily injury" as "[i]mpairment of physical condition or substantial pain"). A person is guilty of REAP if she "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705; ***see*** 18 Pa.C.S.A. § 2301 (defining "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ").

Rather than challenging the sufficiency of the Commonwealth's evidence to establish a particular element of either offense, Yates contends that the evidence was insufficient to support her convictions because the Commonwealth failed to disprove her claim of self-defense. Yates avers that her use of force against McMillan was justified because McMillan initiated the altercation and used unlawful force against Yates by striking her with a vodka bottle. **See** Appellant's Brief, at 9.

Section 505 of our Crimes Code authorizes the justifiable use of force against another person in the interest of defending oneself:

> **(a) Use of force justifiable for protection of the person.**— The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

18 Pa.C.S.A. § 505(a). In cases involving the use of non-deadly force, the law does not impose a duty to retreat from an altercation even if doing so could be done safely. **See** 18 Pa.C.S.A. § 505(b)(3); **Commonwealth v. Berry**, No. 1414 MDA 2024, 2025 WL 2505871, at *3 (Pa. Super. filed Sept. 2, 2025) (unpublished memorandum).[4] Rather, Pennsylvania courts recognize that non-deadly force may be met "with force so long as it is only force enough to repel the attack." **Berry**, 2025 WL 2505871, at *3 (citation omitted).

_____

[4] This Court may rely on unpublished decisions decided after May 1, 2019 for the persuasive value. **See** Pa.R.A.P. 126(b).

- 7 -

"While there is no burden on a defendant to prove [a self-defense] claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense." *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001) (citation omitted). "If a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." *Commonwealth v. Steele*, 234 A.3d 840, 846 (Pa. Super. 2020) (citation omitted). The Commonwealth must introduce affirmative evidence to disprove a self-defense claim, and it "cannot sustain its burden of proof solely on the fact finder's disbelief of the defendant's testimony." *Commonwealth v. Ward*, 188 A.3d 1301, 1304 (Pa. Super. 2018) (brackets and citation omitted).

> If there are other witnesses, however, who provide accounts of the material facts, it is up to the fact finder to reject or accept all, part or none of the testimony of any witness. The complainant can serve as a witness to the incident to refute a self-defense claim. Although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a fact-finder is not required to believe the testimony of the defendant who raises the claim.

*Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014) (quotation marks, citations, and brackets omitted).

At trial, Yates testified that McMillan struck her in the back with a vodka bottle and that in response, she punched McMillan in the face. *See* N.T. Trial, 2/26/24, at 35. This testimony raised Yates' claim of self-defense, as it indicates that she used force to protect herself from McMillan's unlawful

attack. Accordingly, once this evidence was adduced, the Commonwealth bore the burden of disproving Yates' self-defense claim beyond a reasonable doubt. **Steele**, 234 A.3d at 846.

To disprove Yates' claim, the Commonwealth was required to affirmatively show that Yates did not believe her use of force was immediately necessary to protect herself against McMillan's use of unlawful force. **See** 18 Pa.C.S.A. § 505(a). According to the Commonwealth's version of events, as testified to by McMillan, Yates was both the initial and sole aggressor throughout the altercation. **See** N.T. Trial, 2/26/24, at 16, 28. Therefore, under McMillan's version of the facts, Yates could not have believed her use of force was immediately necessary to protect herself because there was no use of unlawful force to defend against. McMillan's testimony, which the court apparently credited, contradicted Yates' proffered justification for exerting force against McMillan. Viewing this evidence in the light most favorable to the Commonwealth, McMillan's testimony that Yates was the sole aggressor was sufficient to disprove Yates' claim of self-defense beyond a reasonable doubt.

Yates avers that the Commonwealth did not meet its burden of proof because McMillan's testimony "was riddled with inconsistencies, self-contradictory, and [] controverted by the other evidence in the case." Appellant's Brief, at 8. While it is undisputed that McMillan's testimony differed vastly from that offered by Yates, the trial court was not required to believe Yates' version of events. **See Smith**, 97 A.3d at 788. Similarly, although

Cropper testified that she saw Diane swing a guitar and fall during the altercation, she did not testify who initiated and escalated the confrontation by exerting physical force in the first instance. *See* N.T. Trial, 5/7/24, at 10. The trial court, as fact-finder, was tasked with assessing credibility and was free to believe all, part, none of these witnesses' testimony. *See Smith*, 97 A.3d at 788.

Therefore, the Commonwealth presented sufficient evidence to disprove Yates' self-defense claim. Accordingly, Yates' challenge to the sufficiency of the evidence fails, and we affirm her judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/6/2026